**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Kevin B. Bevis


     v.                                         Civil No. 07-cv-370-JM

State Farm Fire and
Casualty Company[1]


**O R D E R**


Plaintiff Kevin B. Bevis owns property in a Special Flood Hazard Area on the banks of Baboosic Lake, in the Town of Amherst, New Hampshire.  In May 2006, excessive rain caused the lake waters to breach and flood his property.  Plaintiff filed a claim for the resulting damage with defendant, State Farm Fire and Casualty Company, which insured the property under a "write-your-own" Standard Flood Insurance Policy ("SFIP"), issued pursuant to the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001, et seq.  The claim was not fully paid, and this breach of contract action followed.  Currently before the court is defendant's motion for summary judgment (document no. 13) which, for the reasons set forth below, is granted.

---

[1]Plaintiff erroneously identified defendant as "State Farm Insurance Companies," which defendant corrected its Answer.

<u>Background</u>

On May 14, 2006, when flooding rains severely damaged plaintiff's property, the property was insured under an SFIP issued by defendant, a participant in the federal National Flood Insurance Program ("NFIP"), which was instituted pursuant to the NFIA.  <u>See</u> Def. Mem. in Support of M. for Summ. J. ("Def.'s Summ. J. Mem."), Aff. of James D. Murphy (document no. 9.2) ("Murphy Aff."), ¶ 5.  Like other private insurance companies, defendant carries the SFIP as part of an arrangement with the Federal Emergency Management Agency ("FEMA"), which runs the NFIP.  <u>See</u> <u>id.</u> ¶ 6.  All of defendant's flood insurance policies are SFIP policies, issued in accordance with the NFIP.  <u>See</u> <u>id.</u> ¶ 8.  Plaintiff's policy was specifically for property in a "Flood Hazard Zone" and provided three distinct types of coverage: Coverage A for Buildings, up to $88,000; Coverage B for Contents, up to $66,000; and Coverage D for Increased Cost of Compliance costs, up to $30,000, depending on a variety of factors detailed in the policy.  <u>See</u> Def.'s Summ. J. Mem., Policy Number 29-RA-2535-8 (document no. 9.3) ("Pl.'s Policy").

Plaintiff notified defendant about the flood damage on May 15, 2006, and one of defendant's adjusters, Eric Geissenhainer,

2

met with plaintiff to review the claim.  A few days later, plaintiff informed Geissenhainer that he had spoken to a contractor about the necessary repair work, and had realized that the sub-floor of his home may contain asbestos.  <u>See</u> Murphy Aff. ¶¶ 14 & 15.  Geissenhainer responded to plaintiff, by letter dated May 26, 2006, that plaintiff's SFIP did not provide coverage for the removal of asbestos in the sub-floor, so no payments would be made for any costs associated with asbestos removal.  <u>Id.</u>  Geissenhainer also explained that if plaintiff were to pursue the denial of coverage in a lawsuit, the action would need to be commenced within one year of the written denial of all or part of the claim.  <u>Id.</u>

On May 25, 2006, plaintiff submitted a Proof of Loss ("PoL") form to claim the flood damages.  <u>See</u> Def.'s Summ. J. Mem. at 7; Def.'s Reply Mem. at 4; <u>see</u> <u>also</u> Pl.'s Mem. in Supp. of Obj. to Summ. J. Mot. ("Pl.'s Obj.") at 2, & Aff. of Kevin Bevis (document no. 13.1)("Bevis Aff.") ¶ 6.  Geissenhainer concluded that plaintiff was entitled to $34,470.76 under the building coverage, and $6,859.75 under the contents coverage of the policy, and defendant paid plaintiff $41,330.51.  <u>Id.</u>; <u>see</u> <u>also</u> Murphy Aff. ¶ 13.

The Town of Amherst assessed the damage to plaintiff's home and determined the house was more than 50% destroyed, which rendered it eligible for "mitigation" under Coverage D of the policy.  Plaintiff decided that, because of the extensive flood damage and the need to comply with applicable state and local floodplain management regulations, he would rebuild his home at a new site on the property rather than repair his home in its existing location.  See Bevis Aff. ¶ 7.  On June 15, 2006, plaintiff filed an Increased Cost of Compliance ("ICC") claim, under Coverage D, which stated that the mitigation option selected was "relocation."  See Def.'s Reply Mem., Ex. 1 (document no. 16-2) (12/21/06 Proof of Loss ("PoL") form).  Plaintiff next submitted an itemized list of the costs of demolishing the structure and bringing the property into compliance with applicable regulations, which reflected a total loss claimed of $38,864.  See Bevis Aff. ¶ 8; see also Def.'s Summ. J. Mem., Pl.'s Answers to Def.'s First Set of Interrogatories (document no. 9.7), Ex. A.[2]

---

[2]It is unclear whether Exhibit A's list of itemized costs was part of the June 15, 2006 ICC claim, which constituted its own PoL, or whether the June 15, 2006 ICC claim and Exhibit A were supplements to the original PoL, submitted on May 25, 2006. The record contains only one PoL form, dated 12/21/06, which states that an ICC claim was filed on June 15, 2006.  See Def.'s

Defendant paid plaintiff only $14,205 of the claimed $38,864 in itemized ICC expenses, explaining that plaintiff's costs incurred in connection with relocating the septic system were not covered by the policy.  See Murphy Aff. ¶ 13; Bevis Aff. ¶ 12. On December 11, 2006, Geissenhainer wrote plaintiff to explain his SFIP coverage excluded costs associated with moving his underground septic system, even if the relocation was necessitated by current law.  See Murphy Aff., ¶ 16; Bevis Aff. ¶ 13; see also Def.'s Summ. J. Mem., Geissenhainer letter dated 12/11/06 (document no. 9.5).  Plaintiff then filed an ICC PoL form on December 21, 2006.  See Document no. 16.2.  No further payments were made.  Plaintiff commenced this action on November 13, 2007, to recover the unreimbursed septic system expenses[3], which plaintiff incurred to bring his property into compliance with applicable floodplain management ordinances and regulations and which, he contends, fell within Coverage D of the policy, for ICC expenses.  See Bevis Aff. ¶ 12; see also Pl.'s Inter. Ansr. Nos. 2, 3 & 5.

---

Reply Mem., Att. 1 (document no. 16.2).  This discrepancy in the record, however, is not material to plaintiff's claims.

[3]Plaintiff has claimed damages for these unpaid claims in alternate amounts, either $20,000 or $16,319.  Cf. Compl. ¶ 13 with Pl.'s Inter. Ansr. No. 3.

<u>Discussion</u>

**I.   Standard of Review**

A.   <u>Summary Judgment</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit."  <u>Id.</u> at 248.  In ruling on a motion for summary judgment, the court construes the evidence and all inferences reasonably drawn therefrom in the light most favorable to the nonmovant.  See <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2001); <u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

6

(1986).  Once the moving party has met its burden, the burden
shifts to the nonmovant to "produce evidence on which a
reasonable finder of fact, under the appropriate proof burden,
could base a verdict for it; if that party cannot produce such
evidence, the motion must be granted."  Ayala-Gerena v. Bristol
Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex,
477 U.S. at 323 and Anderson 477 U.S. at 249).  Neither
conclusory allegations, improbable inferences, nor unsupported
speculation are sufficient to defeat summary judgment.  See
Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002); see
also Price v. Canadian Airlines, 429 F. Supp. 2d 459, 461 (D.N.H.
2006).  Summary judgment provides the means to "pierce the
boilerplate of the pleadings" and "dispos[e] of cases in which no
trial-worthy issue exists."  Quinn v. City of Boston, 325 F.3d
18, 28 (1st Cir. 2003) (citing Suarez, 229 F.3d at 53).

B.  The NFIA

The NFIA was passed to provide insurance for properties
located in flood-prone areas that were uneconomical to insure.
See 42. U.S.C. § 4001(b) (2203); see also Phelps v. FEMA, 785
F.2d 13, 14 (1st Cir. 1986) (explaining why Congress established
the NFIP).  To that end, FEMA administers the NFIP, "which

provides flood insurance below actuarial rates to the public."
Rockland Fed. Credit Union v. Witt, 853 F. Supp. 14, 16 n.1 (D.
Mass. 1994); see also Gowland v. Aetna, 143 F.3d 951, 953 (5th
Cir. 1998) (discussing policy reasons behind the NFIP).  While
the NFIA was enacted to insure flood victims were protected, the
terms of SFIPs are strictly enforced because of "'the duty of all
courts to observe the conditions defined by Congress for charging
the public treasury.'"  Phelp, 785 F.2d at 18 (quoting Schweiker
v. Hansen, 450 U.S. 785, 788 (1980) to deny an equitable estoppel
claim).

        FEMA determines the terms and conditions of insurability,
which are set forth in the Code of Federal Regulations ("CFR").
See Rockland, 853 F. Supp. at 16 n.1 (citing 42 U.S.C. §
4013(a)).  "The actual language of an SFIP is uniformly set forth
in the [CFR] appearing in Appendix A(1) of 44 C.F.R. Part 61,"
id., and, consequently, the meaning of the policy provisions are
standardized by federal law.  See id.  The NFIP requires that
only the published SFIP form be used, the terms and provisions of
which cannot be altered, varied or waived except by the express
written consent of FEMA.  See 44 C.F.R. §§  61.13(a), (b), (d) &
(e) (2007); see also Gowland, 143. F.3d at 953.  As a result, all

SFIP provisions must be strictly construed and enforced, because they are dictated by federal law and federal funds are at stake. See id.

When the insurer is a private company issuing a "write your own" SFIP, like defendant here, the same provisions control, and the insurer is simply substituted for FEMA, acting as a fiscal agent for the United States.  See Gowland, 143 F.3d at 953; see also 44 C.F.R. § 61.13(f) & § 4071(a).  Here, because the facts surrounding the denial of coverage are undisputed, whether plaintiff's claims are covered by the policy presents a question of law for the court to decide.  See Atlas Pallet v. Gallagher, 725 F.2d 131, 134 (1st Cir. 1984) (treating an SFIP like all other insurance contracts where scope of coverage presents a question of law for the court).  Although federal law controls disputes over SFIP coverage, standard insurance law principles still apply, including the rule that, "because insurance policies are contracts, basic contract rules govern the interpretation of a policy's terms."  Id. at 135.

II.  **Defendant's Arguments**

1.  Conditions Precedent to Recovery

Plaintiff's SFIP provides that an action to recover money

9

under the policy cannot be brought unless plaintiff has "complied with all the requirements of the policy."  <u>See</u> Pl.'s Policy at 14, § VII, R ("Suit Against Us").  Presumably relying on that provision, defendant argues that plaintiff's claim should be dismissed because plaintiff first failed to properly file a PoL form, and also failed to commence this suit within the statutory one year time period to bring an action.  <u>See id.,</u> § VII, J & R. Both arguments are unavailing on summary judgment, however, because the record is missing critical documents that would demonstrate whether or not plaintiff satisfied these conditions precedent to consideration of the merits of his claim.

The record does not contain copies of either the May 25 or the June 15, 2006 PoL forms that were filed, which prevents me from determining whether plaintiff complied with the requirements for filing his PoL set forth in § VII, J.  Likewise, without the May 25, 2006 PoL, it is impossible to determine whether plaintiff in fact filed a claim for asbestos removal.  A mere inquiry about the scope of coverage under the policy does not constitute the filing of a claim for coverage.  If plaintiff never made a claim for asbestos removal, then defendant's May 26, 2006 letter explaining that asbestos removal was not covered by the policy

10

cannot be considered a denial of coverage for purposes of triggering the statute of limitations.

These issues are not material to the disposition of this case, however, because, as discussed below, plaintiff's SFIP does not cover the expenses he is claiming here.  Accordingly, no further analysis of either the PoL filing requirements or the statute of limitations is warranted.

## 2.  The Scope of Coverage

Plaintiff's SFIP provides standardized coverage for Building and Personal Property, coverages A and B, respectively, "Other Coverage" listed as coverage C and not relevant here, and "Increased Cost of Compliance" coverage set forth in section D. At issue here is whether the costs plaintiff incurred in relocating his septic system and well fall within Coverage D, as ICC expenses.  Plaintiff relies heavily on the ICC provisions that allow reimbursement for costs incurred in bringing the covered property into compliance with floodplain management laws. See Pl.'s Mem. in Supp. of Obj. to M. for Summ. J., NFIP Dwelling Form, SFIP (document no. 13.2) at 6, § III, D.1 & D.3(b); see also 44 C.F.R. Pt. 61, App. A(1), III, D (ICC provision).[4]

---

[4]For ease of reference, cites to plaintiff's SFIP will be referred to as "Pl.'s Policy" followed by the appropriate

Plaintiff argues that both the NFIP and local ordinances required
him to move his septic system and well, to conform with current
floodplain management regulations designed to prevent flood
waters from infiltrating sewerage systems, citing 44 C.F.R. §
60.3.  He now contends that because he was required by law to
relocate the system, his SFIP should reimburse him for those
expenses under its ICC coverage.

        Although Coverage D clearly provides reimbursement for
expenses incurred to bring covered property into compliance with
the floodplain regulatory scheme, a close reading of the policy
demonstrates that it is limited to specific types of property,
which does not include septic systems and wells.  Several
sections of the policy support a reading that excludes coverage
for septic systems and wells.

        The first provision in Coverage D for ICC coverage, provides
generally:

                This policy pays you to comply with a State
                or local floodplain management law or ordinance
                affecting repair or reconstruction of a *structure*
                suffering flood damage.  Compliance activities
                eligible for payment are:  elevation, floodproofing,
                relocation, or demolition (or any combination of
                these activities) of your *structure.*

section, since it is identical to the corresponding CFR
provision.

> Eligible floodproofing activities are limited to:
>
> a.  Nonresidential structures.
>
> b.  Residential structures with basements
>     that satisfy FEMA's standards published
>     in [44 C.F.R. 60.6(b) or (c)].

Pl.'s Policy at 6, § III, D.1 (emphasis added).  Although the policy does not include the term "structure" in its definition section, see id. § II., it defines a "building" as "a structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site," id. § II, B.6, which suggests that the term "structure" was intended to cover buildings and similar objects that have been or are being constructed.[5]  The definition of "building" also explicitly excludes a "gas or liquid storage tank," id., which a septic system and well more closely resemble.

The policy also explicitly provides for the type of property that is eligible for ICC coverage:

> A structure covered under Coverage A – Building
> Property, sustaining a loss caused by a flood
> as defined by this policy must

---

[5]Other sections of the regulations use the term to describe buildings.  For example, SFIP coverage for contents provides: "whenever a structure is subject to imminent collapse or subsidence as a result of erosion or undermining caused by waves or current of water . . .."  See 44 C.F.R. § 63.5.

> (1) Be a "repetitive loss structure" . . .; or
>
> (2) Be a structure that has had flood damage
>     in which the cost to repair equals or
>     exceeds 50 percent of the market value
>     of the structure at the time of the flood.
>     The State or community must have a substantial
>     damage provision in its floodplain management
>     law or ordinance being enforced against the
>     structure.

Pl.'s Policy at 7, § III, D. 3 (ICC coverage eligibility provision). Plaintiff's property was eligible for ICC coverage because the damage to his home exceeded 50% of its market value. See id. This provision further supports a reading of the term structure to be a building or something similarly constructed, that can be ascribed a distinct market value, rather than an underground septic system or well, which generally does not have a market value separate from the property itself.

Next, the policy sets forth a detailed list of costs that are excluded from coverage, including in relevant part:

> Under this Coverage D – Increased Cost of
> Compliance, we will not pay for: . . .
>
> (b) The cost associated with enforcement
>     of any ordinance or law that requires
>     any insured or others to test for,
>     monitor, clean up, remove, contain,
>     treat, detoxify or neutralize, or in
>     any way respond to, or assess the
>     effects of pollutants.

14

```
                    . . .

        (g)  Any compliance activities needed to
             bring additions or improvements made
             after the loss occurred into compliance
             with State or local floodplain management
             laws or ordinances.
```

Pl.'s Policy, § III, 5 (exclusions).  The costs plaintiff
incurred relocating his septic system and well to comply with the
Town of Amherst's floodplain regulations, which in turn are
federally mandated in order to participate in the NFIP, fall
within these subsections, which explicitly exclude coverage.

     Finally, the last subsection of Coverage D, for ICC
expenses, provides:  "All other conditions and provisions of this
policy apply."  Pl.'s Policy at 8, § III, D.6.b.  The very next
section of the policy sets forth "Property Not Covered."  <u>See</u>
<u>id.</u>, § IV.  The language is unambiguous and clear:

```
        We do not cover any of the following property:

        . . .

        8.   Underground structures and equipment,
             including wells, septic tanks, and
             septic systems.
```

<u>Id.</u> at 8-9, § IV, 8 (emphasis added).  Also in this § IV, for
"Property Not Covered," is an "Exclusions" provision, that
explicitly excludes from coverage any costs incurred to comply

with "any ordinance or law requiring or regulating the construction . . . renovation, or repair of the property," unless the activity was specifically described as eligible for ICC coverage in Section D.  See id. at 9, § V, 6.

The above-cited provisions of plaintiff's SFIP dictate the result here.  All of the costs plaintiff incurred to relocate the septic system and the well on his property to bring them into compliance with current floodplain management regulations are not eligible ICC expenses and are not covered by the policy.  The terms of the SFIP are clear and definite, and nothing in the record suggests that these unambiguous provisions were waived or altered to effect another result.  Defendant properly denied plaintiff's claim for reimbursement.

Conclusion

For the reasons set forth above, defendant's motion for summary judgment (document no. 9) is granted.  The clerk is ordered to close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  December 2, 2008

cc:  Jon H. Levenstein, Esq.
     Dennis T. Ducharme, Esq.